**UNITED STATES of America,**

v.

**Patrick KELLY, Defendant.**

**No. 99 CR 422 RWS.**

United States District Court,
S.D. New York.

April 17, 2001.

Honorable Mary Jo White, New York City (Kevin S. Reed, AUSA, of Counsel), United States Attorney for the Southern District of New York.

Lisa Scolari, New York City, for Defendant.

*AMENDED SENTENCING OPINION*

SWEET, District Judge.

On June 7, 2000, a jury found defendant Patrick Kelly ("Kelly") guilty of harassing a witness in violation of 18 U.S.C. § 1512(c)(1). For the reasons set forth below and subject to the sentencing hearing scheduled for April 20, 2000, Kelly will be sentenced to twelve months in prison and a one-year term of supervised release. Pursuant to 18 U.S.C. § 3013, a $25 special assessment is mandatory.

**The Defendant**

Kelly is a forty-six year-old married father of four residing in Garden City, New York. After receiving a Master of Business Administration degree from Fairleigh Dickinson University in 1978, Kelly went on to work in various restaurant, hotel and catering posts. Kelly was discharged from his post as the General Manager of the Water Club Restaurant in East River, New York in 1986, when the owner filed a complaint with the Manhattan District Attorney's office for theft of restaurant funds. Although Kelly's criminal trial resulted in an acquittal, the civil trial judge noted that the amounts Kelly received from altered checks, $451,853.32, vastly overstated any possible sums the restaurant's owner had authorized Kelly to sign for as reimbursement for expenses. Judgment was entered against Kelly on May 2, 1990 for $1,355,559.90, inclusive of restitution and statutory treble damages.

The instant conviction arises out of Kelly's subsequent employment as the catering director at Le Bar Bat, a midtown Manhattan restaurant where Kelly started working in 1993. In early 1998, four female ex-employees at Le Bar Bat filed discrimination claims with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that Le Bar Bat personnel, including Kelly, had made unwelcome verbal and physical sexual advances toward them during their employment. The case was referred to the United States Attorney's Office for the Southern District of New York in March of 1998.

In early April of 1998, Kelly, with the assistance of several coworkers, targeted each of the four complaining ex-employees with unsigned, individualized flyers purporting to have been issued by "neighborhood watch" groups. The flyers included the photographs and home addresses of the women, which were taken from confidential employee files at Le Bar Bat, and accused the women of prostitution, child molestation, and/or drug dealing. The flyers were distributed widely around the neighborhoods where these women lived, mailed to their apartment buildings in at least two cases, and to one woman's out-of-state parents. Each of the four victims,

who are also involved in a pending civil rights action against Kelly, has submitted an impact statement that has been considered in assessing the appropriate penalty for this offense.

Finally, when Kelly discovered that he was under investigation, he asked his co-workers to tell investigators that he had nothing to do with the flyers. As Matthew Tortoso testified at the trial, he and Colin Walsh complied, delaying the investigation and Kelly's prosecution for several months.

### The Guidelines

#### 1. Offense Level

The Presentence Report prepared by the Probation Office grades Kelly's conduct under the United States Sentencing Guidelines ("the Guidelines") at a base level offense level of 12 pursuant to § 2J1.2, and recommends a two-point enhancement for obstruction of justice due to the fact that Kelly instructed others to conceal his crime, pursuant to § 3C1.1. *See also* U.S.S.G. § 2J1.2, comment. (n.2) (noting that although § 3C1.1 enhancement for obstruction of justice typically does not apply to offenses covered under § 2J1.2, it is properly applied if "the defendant obstructed the investigation or trial of the obstruction of justice count."). Kelly's adjusted offense level is 14.

■ However, due to the unusual circumstances of this case, an adjustment for acceptance of responsibility is warranted pursuant to § 3E1.1(a). The Commentary to § 3E1.1 specifies that a two-point reduction may be possible despite the fact that a defendant has proceeded to trial:

The adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial... In each instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pretrial statements and conduct.

U.S.S.G. § 3E1.1, comment. (n.2).

In this case, Kelly attempted to plead guilty to misdemeanor witness harassment pursuant to 18 U.S.C. § 1512(c) prior to trial on felony charge of intimidating a witness, pursuant to 18 U.S.C. § 1512(b)(1). However, the U.S. Attorney's Misdemeanor Committee refused the plea offer and prosecuted Kelly at trial. At the request of the defense, the jury was instructed on the lesser included § 1512(c) charge, and Kelly was ultimately convicted of misdemeanor harassment rather than felony intimidation. Under the circumstances, Kelly's demonstrated willingness to take responsibility for the conduct of which a jury ultimately found him guilty satisfies the requisites of § 3E1.1 and warrants a two-point reduction.

■ That Kelly's base offense level has been enhanced by two points for obstruction of justice does not foreclose a reduction for acceptance of responsibility. Although in most cases "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct[,][t]here may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1, comment. (n.3). *See United States v. Restrepo*, 936 F.2d 661, 669 (2d Cir.1991) (approving district court's application of ad-

justments pursuant to both § 3C1.1 and § 3E1.1).

Here, the conduct which led to the enhancement for obstruction of justice took place soon after the offense conduct, at the initiation of the investigation. Nonetheless, Kelly did seek to accept responsibility formally for his criminal conduct before trial, and it was the government's choice, not his, to proceed. The fact that Kelly will receive a two-point reduction for acceptance of responsibility despite his obstruction of justice should not be interpreted as an incentive for others to hinder investigations in the hopes of heading off formal charges. Rather, in the unique circumstances where a defendant sought to plead guilty to the very charge a jury later convicted him of, a reduction pursuant to § 3E1.1 is appropriate, notwithstanding his earlier attempts to evade justice. *See United States v. Enriquez*, 42 F.3d 769, 773 (2d Cir.1994) ("a defendant may have engaged in conduct constituting an obstruction for which a penalty enhancement is appropriate, but subsequently come to accept responsibility fully").

Therefore, subtracting two acceptance of responsibility points yields an offense level of twelve.

### 2. *Criminal History Category*

Kelly's criminal history consists of a single conviction for drunk driving, in 1998, which gives him one criminal history point pursuant to Guidelines § 4A1.1(c). Therefore, his Criminal History Category is I.

### 3. *Applicable Guidelines Range*

The Guidelines' range for an offender with a base level of 12 and a Criminal History Category of I is 10 to 16 months. However, the statute under which Kelly was convicted provides for a maximum term of imprisonment of one year. *See* 18 U.S.C. § 1512(c). Therefore, Kelly's applicable sentencing range is from 10 to 12 months. *See* U.S.S.G. § 5G1.1(c)(1).

### *A Downward Departure is Not Warranted*

In addition to filing approximately forty-six letters of support from Kelly's family, friends, and coworkers, defense counsel has raised two grounds for a downward departure: (1) the crime is outside of the heartland of the Guidelines; and (2) aberrant behavior. For the reasons set forth below, neither of these arguments is availing.

### 1. *Kelly's Conduct is Not Outside the Heartland of § 2J1.2*

First, counsel argues that the conduct of which Kelly was convicted is sufficiently unusual to take the offense out of the heartland of the applicable Guideline, warranting a downward departure. *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The Guidelines provide that § 2J1.2 is the applicable section for violation of 18 U.S.C. § 1512.

The background notes of the commentary identify the typical nature of offenses to be addressed by § 2J1.2 as follows:

This section addresses offenses involving the obstruction of justice generally prosecuted under the above-referenced statutory provisions. Numerous offenses of varying seriousness may constitute obstruction of justice: using threats or force to intimidate or influence a juror or federal officer; *obstructing a civil or administrative proceeding;* stealing or altering court records; unlawfully intercepting grand jury deliberations; obstructing a criminal investigation; obstructing a state or local investigation of illegal gambling; *using intimidation* or force *to influence testimony, alter evidence, evade legal process,* or obstruct

the communication of a judge or law enforcement officer; or causing a witness bodily injury or property damage in retaliation for providing testimony, information or evidence in a federal proceeding. The conduct that gives rise to the violation may, therefore, range from a mere threat to an act of extreme violence.

U.S.S.G. § 2J1.2, comment. (backg'd) (emphasis added). Although the unique type of personal attack or public smear on the reputation of individuals in retaliation for invoking legal process is not described in the commentary, this conduct is sufficiently related to justify applying ' § 2J1.2. Based upon the testimony at trial and the victim impact letters submitted before sentencing, Kelly's conduct certainly intimidated the victims. Moreover, although defense counsel argues that Kelly had no intent to influence witnesses, Kelly targeted his victims specifically for having sought to initiate legal proceedings—legal proceedings in which they would undoubtedly appear as witnesses. At least one other court has applied § 2J1.2 to harassing conduct analogous to that in this case. *See United States v. Gunwall*, No. 97–5108, 97–5123, 156 F.3d 1245, 1998 WL 482787 (10th Cir. Aug.12, 1998) (table) (approving district court's application of § 2J1.2 to conviction under 18 U.S.C. § 371 and 26 U.S.C. § 7212(a), where defendant who owed back taxes had engaged in numerous instances of harassing IRS employees). No downward departure is warranted on this basis.

It should be noted that Kelly would receive the same Guidelines calculation if he were sentenced pursuant to § 2A6.1, the most relevant other provision in the Guidelines, which applies to "threatening or harassing communications."[1] That section, like § 2J1.2, also provides for a base offense level of twelve, unless several specific offense characteristics (which are not present here) exist. U.S.S.G. § 2J1.2, comment. (n.1) (recognizing that "this offense includes as particularly wide range of conduct and that it is not possible to include all of the potentially relevant circumstances in the offense level").

Although the offense in *United States v. Mazza,* No.Crim. A. 98–113–1, 98–113–2, 1999 WL 1244418 (E.D.Pa. Dec.20, 1999), violated 18 U.S.C. § 876, mailing threatening communications, rather than § 1512(c), the facts of the harassment there mirror those in this case. Specifically, the defendant had sent a letter to his wife's divorce attorney threatening to smear her reputation in retaliation for her alleged attempts to tarnish the defendant's reputation during divorce proceedings. Due to the similarity with the instant case, the letter bears quoting at some length:

> This is a warning to you and your husband to cease and desist at once the blacklist campaign and smear tactics you're engaging in against the reputation of [the defendant] ... Overwelming [sic] documentation in my possession supports and confirms this. Please be advised if you continue in these underhanded activities, this will have far reaching consequences to both you and [your divorce attorney]. Under the law, punishment will be swift and severe. Right now hanging by a threat is your standing in the legal community and also in the community at large. Do you want this black cloud over your head? If you

---

1. Defense counsel describes Kelly's conduct as intending "to demonstrate how it feels to be the victim of scandalous allegations. To show that when such allegations are publicized they can hurt one's reputation and standing in their community. To show that it hurts when it happens to you, so, you shouldn't do it to others." (Scolari Apr. 2, 2001 Letter at 8–9.)

value the security you now have and do not want to jeopardize it, then back off. Remember if you are setting your sights on destroying an individual in this divorce case, the back you stab may well be your own and your husband. [sic.]

1999 WL 124418, at *1–*2. Section 2A6.1 of the Guidelines applies to the conduct described in *Mazza*. The only material difference between the harassment in *Mazza* and here is that the defendant in *Mazza* threatened to smear the victim's reputation before going through with it. Kelly's victims had no such warning. As such, § 2A6.1 may be an appropriate alternative to § 2J1.2. However, this question is academic, as both sections provide for the same base offense level of 12 under these circumstances.

### 2. *Kelly's Offense Does Not Meet the Standard for a Departure for Aberrant Behavior Pursuant to § 5K2.20*

■ Section 5K2.20 of the Guidelines authorizes sentencing judges to depart downwardly "in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior." A departure for aberrant behavior is warranted only where the offense conduct was a "single criminal occurrence . . . that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20, comment. (n.1). If each of these factors is met, courts may consider the following factors in determining whether to grant a downward departure under this provision: "the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the offense." *Id.*, comment. (n.2).

In order to carry out the offense conduct, Kelly and his accomplices had to devise the scheme, access confidential personnel files of each of the four victims for their home addresses and photographs, design, draft and copy the flyers, travel to each victim's neighborhood and post numerous flyers in public view, and, in three cases, mail the flyers to victims and/or the victim's parents. These acts, although they took place "over the course of a few hours one night," in defense counsel's words, in fact required significant planning. Moreover, the duration of Kelly's conduct should not be measured by the hours it took to accomplish, but rather by the lasting adverse impact on the victims that it was calculated to—and in fact did—accomplish. Finally, although Kelly was acquitted of criminal wrongdoing at his previous employment at the Water Club, the Honorable Robert P. Patterson's findings with regard to Kelly's role in taking funds from his employer, the judgment that issued, and the Probation Department's characterization of these acts, preclude this Court from finding that he has led an "otherwise law-abiding life."

Even accepting as true the common theme in the forty-six letters of support—that Kelly has been a warm and upstanding neighbor, father, family member—the Court declines to exercise the discretion to depart on the basis of aberrant behavior.

### *The Sentence*

Kelly shall be sentenced to twelve months in prison, to be followed by one year of supervised release. *See* 18 U.S.C. § 3583(b)(3); Guidelines §§ 5D1.2(a)(3), 5D1.1(b).

Kelly shall also pay a $10,000 fine within 30 days of his release from custody or on an installment plan to be established by the Probation Office. *See* 18 U.S.C. § 3571 (statutory maximum $100,000 fine);

Guidelines § 5E1.2(c)(3) (providing for applicable fine range of $4,000 to $40,000).

In light of the pending civil suit, restitution shall not be imposed.

A $25 special assessment is mandatory pursuant to 18 U.S.C. § 3013.

The following conditions of supervised release are mandatory: Kelly shall not (1) commit another federal, state, or local crime; (2) illegally possess a controlled substance; or (3) possess a firearm or destructive device. In addition, Kelly shall submit to a drug test within fifteen days of placement on supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

Finally, Kelly will also be subject to the following special supervised release conditions: he shall provide the probation officer with access to any requested financial information. Kelly shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless Kelly is in compliance with the installment payment schedule.

Kelly is to report to the nearest Probation Office within 72 hours of being released from custody. Supervision shall be in the district of residence.

It is so ordered.