UNITED STATES of America, Appellee,

v.

Henry E. ENRIQUEZ; Richard Enriquez, also known as Richard Enriquez Arcos; Alonso Medina and Arlene Pettigrew, Defendants,

Gustavo F. Medina, also known as Angel Cortez, Defendant–Appellant.

No. 86, Docket 94–1013.

United States Court of Appeals, Second Circuit.

Argued Sept. 21, 1994.

Decided Dec. 19, 1994.

Bonnie S. Klapper, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., E.D.N.Y., David C. James, Asst. U.S. Atty., of Counsel), for appellee.

Norman L. Reimer, New York City (Gould Reimer & Gottfried, Glenn R. Bruno, on the Brief), for defendant-appellant.

Before: PRATT, LEVAL, and CALABRESI, Circuit Judges.

LEVAL, Circuit Judge:

This is an appeal from a sentence entered in the United States District Court for the Eastern District of New York, Leonard D. Wexler, *Judge*, on December 20, 1993. Gustavo Medina pled guilty on March 31, 1993 to one count of conspiracy to evade currency reporting requirements in violation of 18 U.S.C.A. § 371 and five counts of causing the filing of false reports in violation of 26 U.S.C.A. §§ 6050I(f)(1), 7203 (West Supp. 1994). He was sentenced to 26 months' imprisonment, two years' supervised release and a $300 special assessment.

On appeal, Medina requests resentencing before a new judge and the preparation of a new presentence report. For the reasons set forth below, we vacate and remand.

## Background

As part of his participation in a money-laundering conspiracy, Medina purchased eight automobiles from several car dealers at a total cost of $233,963, and avoided the filing of currency transaction reports by structuring the payments in amounts of less than $10,000. Medina also attempted to bribe one car dealer to induce it to refrain from filing a currency transaction report and to turn over to Medina the dealer's files concerning the car sales. Medina was accompanied by another individual at the time he purchased the automobiles; evidence possessed by the government suggested that this individual was Henry Enriquez.

Medina was arrested in May of 1992 and was indicted shortly thereafter. At a December 16, 1992 session with the government at which Medina made a proffer of cooperation, he admitted his own guilt but denied any knowledge of involvement of Henry Enriquez. Medina claimed that the individual who accompanied him to the car dealership was "Joe Columbus."

Armed with the information provided by Medina, the government began investigating the whereabouts of Columbus. After checking addresses provided by Medina's counsel, the agents located Columbus's sister. She told them Columbus was in Ecuador and provided the agents with her father's address. Columbus's father advised the agents that Medina had attempted to persuade him to tell the government that Columbus had been involved in Medina's criminal activities, but that he refused to do so.

On March 12, 1993, Medina and the government entered into a plea agreement, which provided in part:

In exchange for the defendant pleading guilty, at sentencing the [United States Attorney's] Office agrees that it will … agree to a Probation Department finding that the defendant is entitled to a two-level adjustment for acceptance of responsibility.

. . . .

… Based upon information now known to it, the Office estimates the likely adjusted offense level under the Sentencing Guide-

lines to be level 12, which includes a two-level reduction for acceptance of responsibility under Guidelines Manual § 3E1.1. This level carries a range of imprisonment of ten to sixteen months.... The Office further reserves its right to move for an upward departure under the Sentencing Guidelines. This estimate is not binding on the Court or on the parties, and if the appropriate Guideline offense level as determined by the Court is different, the defendant will not be entitled to withdraw the plea.

On March 31, 1993, Medina pled guilty to all the charges. At the allocution, the Assistant U.S. Attorney described the plea agreement to the court in different-sounding terms. She stated that in return for the defendant's plea, the government would not "contest that [Medina] be given a two point adjustment for acceptance of responsibility." The defendant and his lawyer confirmed that this was an accurate characterization of the plea agreement.

The Probation Department then conducted its presentence investigation and issued its presentence report ("PSR"). The PSR recommended denial of a downward adjustment for acceptance of responsibility and assessment of a two-point enhancement for obstruction of justice.[1] These recommendations were based on Medina's false statement given at his proffer session regarding Joe Columbus, and his attempt to induce Columbus's father to tell the government that his son was involved in the offense.

Medina objected to these recommendations, at first orally, and then by letter to the Probation Department. The government submitted two letters to the Probation Department in response, arguing in favor of the denial of acceptance of responsibility and in support of the enhancement for obstruction of justice. The Probation Department adhered to its position.

At the sentencing hearing, the government similarly argued to deny Medina the reduction for acceptance of responsibility and to add two levels for obstruction of justice. The court accepted the government's arguments, adding four levels to what had been estimated in the plea agreement. In accordance with the resulting offense level,[2] the court sentenced Medina to 26 months' imprisonment. This appeal followed.

*Discussion*

Medina contends the government breached its obligations under the plea agreement when it opposed a two-level reduction for acceptance of responsibility. He stresses that, at the time the agreement was made, the government possessed all the information it later used to oppose the reduction. Medina contends this breach was committed twice, once when the government argued to the Probation Office, and again when it argued to the court at sentencing. He asks that the sentence be vacated, that the case be remanded for resentencing before a new district judge with a new presentence report, and that the government be bound to refrain on remand from opposing the reduction for acceptance of responsibility. The government consents to this relief.

The defendant further contends that the same provision of the plea agreement should bar the government from arguing in support of an enhancement for obstruction of justice. The government opposes this contention.

■ 1. *Remand for resentence.* The government has consented to the relief sought by the defendant concerning the issue of acceptance of responsibility. We therefore vacate the sentence imposed in the district court and remand for a new sentence before a new judge, with a new presentence report. We take pains to note, however, that our granting this relief implies not even the slightest criticism of the actions of the district judge. Judge Wexler's handling of the

1. The PSR also recommended adding four points to Medina's offense level based on his knowledge that the funds used to purchase the cars were derived from criminal activity. That recommendation was disavowed by the government and was not adopted by the court.

2. An additional level was added by reason of the aggregate value of the cars purchased pursuant to the scheme, placing Medina at level 17, which provided a range of 24–30 months imprisonment.

matter was in every way appropriate. His disqualification results not from any inappropriate action on his part, but by reason of the government's failure to adhere to its contractual obligation.

The effect of the government's breach of its commitment is difficult to erase if the case remains before the same judge, because the judge's decision to deny the reduction was based on his assessment of the facts. As the facts on remand will be the same, regardless of the arguments advanced by the PSR and the government, it is likely that the same judge would reach the same result as he reached before. On the other hand, had the government adhered to its commitment not to contest the defendant's request for a two-level reduction, there is some likelihood that the judge would never have given serious thought to denying it. Resentencing before the same judge might therefore deprive the defendant of the benefit he was promised in the plea agreement. Accordingly, in recognition of these factors, we think it was appropriate for the government to consent to resentencing before a new judge, even though Judge Wexler is not subject to criticism. *See United States v. Carbone,* 739 F.2d 45, 48 (2d Cir.1984) (resentencing before different judge implies no criticism of sentencing judge, but rather insures compliance with plea agreement).

■ 2. *The confusing terms of the plea agreement.* In determining whether a plea agreement has been breached, a court must decide "what the parties reasonably understood to be the terms of the agreement," remembering that "any ambiguity should be resolved against the government." *United States v. Miller,* 993 F.2d 16, 20 (2d Cir.1993) (citations omitted). While admitting that it breached the terms of the plea agreement as expressed orally at the taking of the plea, the government insists that it did not violate its commitment under the terms of the plea agreement, as written, which provided that the government would "agree to a Probation Department finding that the defendant is entitled to a two-point adjustment for acceptance of responsibility." The government argues that, under this provision, it had no obligation unless and until the Probation Department in fact recommended the adjustment, which it did not do.

Because the government has consented to the relief sought by the defendant on the particular facts of this case, it is unnecessary for us to guess at the meaning of the confusing terms of the written plea agreement. But we do observe that by using such unclear terms in the plea-agreement form it presents to defendants, the government sows unnecessary confusion. If this provision means no more than the government now contends, we note that it confused even the Assistant U.S. Attorney, who apparently understood it to mean that "the government is not going to contest that [the defendant] be given a two-level adjustment."

Furthermore, the interpretation the government now advocates raises a difficult question whether the agreement would bar the government from urging the Probation Officer to recommend denial of the adjustment. We think the government would do well to discontinue use of this formulation and instead seek terms that will convey to each of the parties, and the court, a clear understanding of the rights and obligations created.

■ 3. *Obstruction of justice.* Medina contends that the relationship between obstruction of justice and acceptance of responsibility is so close that the government's promise not to oppose a reduction for acceptance of responsibility should bar it from supporting an increase of sentence for obstruction of justice. He points out that the commentary to U.S.S.G. § 3E1.1. on Acceptance of Responsibility states: "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." § 3E1.1, comt. (n. 4). He contends that if the relationship is sufficiently close that obstruction of justice bars a finding of acceptance of responsibility, then, as a corollary, an agreement by the government to support acceptance of responsibility is logically incompatible with the government's advocating obstruction of justice.

Although the argument has some force, we do not find it persuasive. There is unquestionably a strong relationship between the two issues, *see United States v. Bonds,* 933 F.2d 152, 156 (2d Cir.1991); *United States v. Irabor,* 894 F.2d 554, 557 (2d Cir.1990), but in certain cases they may be subject to different considerations, making it appropriate for the court to assess both the enhancement and the reduction. *See United States v. Restrepo,* 936 F.2d 661, 669 (2d Cir.1991). As the most obvious example, a defendant may have engaged in conduct constituting an obstruction for which a penalty enhancement is appropriate, but *subsequently* come to accept responsibility fully—for the obstruction as well as the crime of conviction. Although in certain cases, a government concession on the one issue may be incompatible with an application for an enhancement on the other, we see no reason why this should be a general rule.

The defendant argues further that, where the facts supporting a possible increase for obstruction were known to the prosecutor at the time of the plea agreement, and the government nonetheless set forth in the agreement an estimate of the likely offense level that did not include any provision for obstruction of justice, the government should be barred from seeking such an adjustment. It is sufficient answer in this case that the plea agreement stated, "This estimate is not binding on the Court or on the parties...." The parties thus expressly left themselves free to argue even for positions that were directly inconsistent with the estimate set forth in the agreement.

We therefore reject Medina's contention that the government is barred from seeking an upward adjustment for obstruction of justice on remand.

### Conclusion

The judgment of the district court is vacated and the case remanded for resentence on the terms discussed in this opinion.