**UNITED STATES of America,**
**Appellee,**

v.

**John PALLADINO, Defendant–**
**Appellant,**

Vincent Guerrieri, Defendant.

**Docket No. 03–1146.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 10, 2003.

Decided: Oct. 10, 2003.

**30**

J. Edward Meyer (Patricia B. Wild, of counsel), Meyer Taub & Wild, LLP, New York, NY, for Defendant–Appellant.

Caren Myers, Assistant United States Attorney (David C. James, Assistant United States Attorney, of counsel, Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, on the brief), United States Attorney's Office, Eastern District of New York, Brooklyn, NY, for Appellee.

Before: VAN GRAAFEILAND, CABRANES, and B.D. PARKER, Jr., Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

Defendant John Palladino appeals from a judgment of conviction entered in the United States District Court for the Eastern District of New York (Allyn R. Ross, *Judge*) on February 27, 2003, after a plea of guilty, pursuant to a plea agreement, to one count of transmitting a threat in interstate commerce, in violation of 18 U.S.C. § 875(c).[1] Palladino was sentenced primarily to 18 months' imprisonment.

On appeal, Palladino asserts that the District Court should have afforded him the opportunity to withdraw his plea at sentencing. He contends that the Government violated the plea agreement by seeking a six-point sentencing enhancement based on conduct known to the Government at the time of the agreement, but not included in the Government's estimated offense level. In the circumstances presented, we agree with defendant that the Government's actions were inconsistent with the language and the spirit of the plea agreement, and we therefore vacate the judgment and remand the cause to the District Court to permit defendant to withdraw his plea.[2]

1. The text of 18 U.S.C. § 875(c) provides as follows:

Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 875(c).

2. Defendant also argues: (1) that his plea was improperly accepted because it was without a factual basis and because the conduct to

As explained below, the mandate shall be stayed for 30 days, during which time defendant will have an opportunity to withdraw this appeal in view of the possibility of a longer sentence on remand.

## I.

Defendant entered a plea of guilty on July 11, 2002 before Magistrate Judge Steven M. Gold pursuant to a plea agreement with the Government. The plea was accepted by Judge Ross on February 26, 2003. In his plea allocution defendant admitted to the following conduct in violation of 18 U.S.C. § 875(c):

> During the period of time between August 1st, 2001 and March 25th, 2002, I had a telephone conversation with Vincent Guerrieri between New Jersey and Staten Island, and we made a threat to physically harm Robert Capafari if he did not repay a debt he owed.

Tr. of 7/11/02 at 33.

The plea agreement prepared by the Government, and signed by defendant and his counsel on June 19, 2002, stated as follows: *"Based on information known to the Office at this time,* the Office estimates the likely adjusted offense level under the Sentencing Guidelines to be level 10 ...." (emphasis added). The agreement also stated that "the Guidelines estimate set forth [above] is not binding on the Office, the Probation Department or the Court," and that "[i]f the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is different from the estimate, the defendant will not be entitled to withdraw the plea."

After the plea proceedings before Magistrate Judge Gold, and prior to defendant's sentencing hearing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") that raised the possibility of a six-point sentencing enhancement from offense level 10 to offense level 16 for "conduct evidencing an intent to carry out [defendant's] threat" under U.S.S.G. § 2A6.1(b)(1), but noted that the enhancement was without a sufficient factual basis.[3] Upon reading the PSR, the Government—now represented by a different Assistant United States Attorney—transcribed for the Probation Office a tape-recorded conversation from December 26, 2001, in which defendant angrily indicated his intent to carry out his previously articulated threat. With this evidence now in hand, the Probation Office, in a Second Addendum to the PSR, recommended the imposition of a six-point sentencing enhancement to offense level 16.

Despite the Government's initial estimate of offense level 10 in the plea agreement—which the Government concedes was made with full knowledge of the existence of the tape transcribed for the Probation Office—the Government submitted a February 12, 2003 letter to the Court in which it argued in favor of the six-level enhancement recommended in the PSR. The Government renewed this argument at defendant's February 23, 2003 sentencing hearing before Judge Ross.

At sentencing, the Court determined, on the basis of the tapes transcribed by the Government, that the six-level enhancement was appropriate. The Court rejected defense counsel's assertion that the

---

which he pleaded was not a crime; and (2) that his sentence was grossly excessive. In view of our disposition, we intimate no view as to the merits of these claims.

3. The text of U.S.S.G. § 2A6.1(b)(1) states as follows: "If the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels." U.S.S.G. § 2A6.1(b)(1) (Nov. 2002).

Government had violated the plea agreement by seeking a six-point enhancement. First, the Court rejected the argument that the Government had violated its specific pledge—apart from its estimate of the proper offense level—either to make no recommendation as to the proper sentence "within the Guidelines range" or to "make no motion for an upward departure under the Sentencing Guidelines." In open court, Judge Ross correctly noted that the Government had merely requested a "sentencing enhancement," and had not requested a specific sentence within the Guidelines range or an "upward departure."

The Court observed that "[t]he issue really is . . . whether the estimated guideline calculation in the agreement[—which is] followed by [a] very clear statement that the estimate isn't binding on the office, the Probation Department or the court[—] whether that estimate is correct." Tr. of 2/26/03 at 6. The Court concluded as follows:

> I should say that I have reviewed the allocution of Mr. Palladino before Judge Gold and I do find that it's knowing and voluntary, that there is a factual basis, and I adopt his recommendation and accept the plea, but time and time again, including in the allocution, Mr. Palladino is told that this is just an estimate.

*Id.* at 6–7. The Court then stated:

> I understand the frustration of it, but it's something that we do meet sadly not infrequently. There is a mistake in the estimated guideline calculation and that's why everyone is told in the plea agreement, during the allocution, if there is a mistake, if the court determines it to be otherwise, there's no ground to withdraw the plea.

*Id.* at 7. The Court did not consider the import of language in the plea agreement which stated that the Government's estimate, though subject to change, was "[b]ased on information known to the Office [at the time of the agreement]."

The Court ultimately stated that it "underst[ood] the surprise to Mr. Palladino with regard to the sentencing guidelines, and for that reason . . . [would] sentence him to the bottom of the guideline" range to a term of 18 months' imprisonment.[4] *Id.* at 29.

On appeal, defendant asserts that the six-point sentencing enhancement was contrary to the language and the spirit of the plea agreement because "[t]he Government had no new information which, under the terms of the Plea agreement, could have justified its enhancement request." Def.'s Br. at 26.

## II.

"We review interpretations of plea agreements *de novo* and in accordance with principles of contract law." *United States v. Riera,* 298 F.3d 128, 133

---

4. The Court sentenced defendant to the bottom of the Guidelines range at offense level 15, which is 18 months' imprisonment. It would appear that a six-point enhancement under U.S.S.G. § 2A6.1(b)(1), when added to the Government's estimate of offense level 10 in the plea agreement, would yield an offense level of 16—for which the minimum term of imprisonment is 21 months. U.S.S.G. ch. 5, pt. A (sentencing table) (Nov.2002). It is unclear from the record why the District Court applied offense level 15, rather than offense level 16. However, since neither party has objected to the sentence on this ground, any possible claim on this score has been forfeited on appeal. *See* Fed.R.Crim.P. 52(b). We decline to exercise our discretion to consider this issue (i) because the record is undeveloped on this question, and (ii) because the issue is irrelevant to the dispositive question on appeal—namely, whether the enhancement in this case was properly imposed in view of the language of the plea agreement.

(2d Cir.2002) (citing *United States v. Padilla*, 186 F.3d 136, 139 (2d Cir.1999)). A sentence imposed pursuant to a plea agreement "must follow the reasonable understandings and expectations of the defendant with respect to the bargained-for sentence." *United States v. Ferrara*, 954 F.2d 103, 105 (2d Cir.1992). We have observed that "[b]ecause the government ordinarily has certain awesome advantages in bargaining power, any ambiguities in the agreement must be resolved in favor of the defendant." *Riera*, 298 F.3d at 133 (internal quotation marks and citation omitted).

The narrow question presented in this case is whether the Government violated the language of this particular plea agreement when it sought a six-level sentencing enhancement on the basis of information that was known to it at the time of the agreement, but was not reflected in the estimated offense level in the plea agreement.

The relevant language of the plea agreement states as follows:

> 2. . . . *Based on information known to [the United States Attorney's Office for the Eastern District of New York] at this time,* the Office estimates the likely adjusted offense level under the Sentencing Guidelines to be level 10, which is predicated on the following Guidelines calculation:

| | | |
|---|---|---|
| Base Offense Level | § 2A6.1(a) | 12 |
| Acceptance | § 3E1.1 | -2 |
| Adjusted Offense Level | | 10 |

> This level carries a range of imprisonment of 6 to 12 months, assuming that the defendant has no prior convictions. The defendant agrees to this Guidelines calculation.
>
> 3. *The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court. If the Guidelines offense level* advocated by the Office, or determined by the Probation Department or the Court, is different from the estimate, the defendant will not be entitled to withdraw the plea.
>
> . . .
>
> 5. The Office agrees that:
>
> a. . . . .
>
> . . . based upon information now known to the Office, it will
>
> b. take no position concerning where within the Guidelines range determined by the Court the sentence should fall; and
>
> c. make no motion for an upward departure under the Sentencing Guidelines.

(emphases added).

Defendant reads paragraph two of the agreement as a commitment that the Government would seek an offense level of 10 "based on information known to the [Government] at [the time of the agreement]." Under this reading, the language of the agreement in paragraph three stating that the estimate was "non-binding," and that defendant "would not be entitled to withdraw his plea" if the Government advocated a different offense level, was intended only to allow the Government to change its request if it later acquired new information. The Government, on the other hand, takes the view that the estimate in paragraph two was truly non-binding in all respects, and was not contingent upon the Government's receiving no new information.

It is a fact—a curious fact—that the language in paragraph two of the agreement stating that the Government's estimate of the relevant offense level was "based on information known to the Government at this time" was never specifically brought to the attention of the District Court.

In letters to the District Court, and at sentencing, defense counsel vigorously argued that the enhancement was improper in view of the Government's estimate of offense level 10 in paragraph two. Defense counsel also relied on the language in paragraph five of the agreement, which states that "based upon information now known to the Office," it would take no position as to the appropriate sentence with the Guidelines range and make no motion for an upward departure. However, defense counsel never cited the similar language contained in paragraph two. The District Court thus correctly rejected the language in paragraph five as irrelevant, and determined that the mere existence of an estimate in paragraph two did not render the estimate binding.

For its part, the Government—which was represented at the sentencing hearing by a different Assistant United States Attorney from the one who had signed the plea agreement—also never brought to the Court's attention the language in paragraph two of the agreement, although it did concede that the information on which it sought a six-point enhancement was not new. At oral argument before this Court, the Government expressed surprise that the plea agreement included language indicating that the Government's estimate was "[b]ased on information known to the [Government] at [the time of the plea]."

In the circumstances presented in this case, we believe that defendant had a reasonable expectation that the Government would not press the Court for an enhanced offense level in the absence of new information. The language of the agreement specifically stated that the Government's estimate was "based on information known to the [Government] at [the time of the plea]." According to the Government, the information on the tape that served as the basis for the disputed enhancement was known to the Government at the time the plea agreement was signed. It was thus logical for defendant to believe that the estimate, and the Government's stance at the sentencing hearing, would not be altered in the absence of new information or, for that matter, simply because a new Assistant United States Attorney had taken over the case and adopted a different view of the matter.

At the very least, the plea agreement was ambiguous as to whether the Government could justifiably pursue the enhancement sought in this case. We have consistently held that any such ambiguity in a plea agreement must be construed against the Government. *See Riera,* 298 F.3d at 133; *Padilla,* 186 F.3d at 140; *United States v. Ready,* 82 F.3d 551, 558–59 (2d Cir.1996).

■ Accordingly, we hold that the Government breached the plea agreement by advocating a six-level sentencing enhancement on the basis of information that was known to the Government at the time of the agreement, but was not reflected in the estimated offense level in the plea agreement. It is well established that " '[t]he remedy for a breached plea agreement is either to permit the plea to be withdrawn or to order specific performance of the agreement.' " *United States v. Lawlor,* 168 F.3d 633, 638 (2d Cir.1999) (quoting *United States v. Brody,* 808 F.2d 944, 947 (2d Cir.1986)); *see also United States v. Alexander,* 869 F.2d 91, 94 (2d Cir.1989). The choice between these remedies is generally "a discretionary one guided by the circumstances of each case." *Palermo v. Warden, Green Haven State Prison,* 545 F.2d 286, 297 (2d Cir.1976) (citing *Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)).

■ In the circumstances here presented, we agree with defendant that permit-

ting withdrawal of his plea is the correct remedy. Specific performance in this case is rendered difficult by the fact that, on remand, the District Court cannot simply erase its knowledge that the Government has previously taken a position in favor of the imposition of the disputed six-point enhancement. *See Lawlor,* 168 F.3d at 638 ("The effect of the government's breach of its commitment [not to recommend a sentencing enhancement] is difficult to erase if the case remains before the same judge . . . ." (quoting *United States v. Enriquez,* 42 F.3d 769, 772 (2d Cir.1994) (internal quotation marks omitted))). Although remand to another judge for resentencing, pursuant to a new PSR, is possible, *see, e.g., Enriquez,* 42 F.3d at 772, we believe that the plea agreement in this case is hopelessly tainted by the introduction of new evidence known to the Government at the time of the plea—namely, the conversation transcript submitted to the Probation Office—that cannot be magically erased or ignored on remand. On balance, we conclude that defendant should be permitted to withdraw his plea. We therefore vacate the judgment and remand to allow defendant to do so.

## III.

As a final matter, we note that what appears to be a "victory" for defendant in this case could ultimately result in a conviction on remand that carries a longer sentence than that initially imposed. *See, e.g., United States v. Velazquez,* 246 F.3d 204, 215–17 (2d Cir.2001) (noting that defendants' " 'victory' in having their sentences vacated might ultimately result in increased sentences"). If a new plea agreement cannot successfully be negotiated, then defendant would have to stand trial and, if convicted, the Government could again seek to impose the disputed six-level enhancement, as well as any other enhancement it may deem appropriate in the circumstances. Even if the Guidelines range calculated by the District Court turned out to be identical to the range calculated initially, there is no guarantee that the sentencing judge would again choose to sentence defendant at the bottom of the applicable Guidelines range. Under these circumstances, defendant could face a sentence well in excess of 18 months, notwithstanding the fact that it was the Government's violation of the plea agreement that gave rise to the instant appeal.

In the interests of justice, and in view of the impracticability of a specific performance remedy in this case, we will stay the issuance of the mandate for 30 days to allow defense counsel to confer one final time with defendant regarding the risks of withdrawing his plea. Defense counsel and the Government may confer during this time period as they may deem appropriate. Defendant shall have the option to withdraw his appeal at any time prior to the issuance of the mandate. *See Velazquez,* 246 F.3d at 217 (staying issuance of the mandate for 30 days "to afford the Appellants an opportunity to inform the Clerk within that time whether they wish to withdraw their pending appeals").

\* \* \* \* \* \*

For the reasons set forth above, we VACATE the conviction and REMAND the cause to allow defendant to withdraw his guilty plea. The mandate shall be stayed for 30 days, during which time defendant shall have the option to withdraw the instant appeal.