**UNITED STATES of America,**
**Appellee,**

v.

**Asker MAMMEDOV, Defendant–**
**Appellant.**

**No. 06–2971–cr.**

United States Court of Appeals,
Second Circuit.

Dec. 30, 2008.

---

AFTER ARGUMENT AND UPON DUE CONSIDERATION of the appeal from the United States District Court for the Eastern District of New York (Glasser, J.), it is hereby **ORDERED, ADJUDGED,** and **DECREED** that Mammedov's conviction and sentence of imprisonment imposed by the District Court are **AFFIRMED,** and the restitution order imposed by the District Court is **VACATED.** We **REMAND** for further proceedings consistent with this order.

Marsha R. Taubenhaus, New York, NY, for Defendant–Appellant.

David C. James, Pamela K. Chen, Assistant United States Attorneys, for Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee.

PRESENT: Hon. WILFRED FEINBERG, Hon. WALKER and Hon. DEBRA A. LIVINGSTON, Circuit Judges.

## SUMMARY ORDER

Defendant–Appellant Asker Mammedov ("Mammedov") pled guilty in the United States District Court for the Eastern District of New York (Glasser, J.) to an information charging him with one count of sex trafficking, in violation of 18 U.S.C. § 1591(a). On appeal, Mammedov contends that the Government breached the plea agreement and that the District Court's restitution order was improper on several grounds. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

### I. The Plea Agreement

Even where, as here, a defendant waives his right of appeal as part of a plea agreement, the defendant may appeal his sentence if he can show that the government has breached its contractual obligations. *United States v. Rosa*, 123 F.3d 94, 98 (2d Cir.1997). "We review interpretations of plea agreements *de novo* and in accordance with principles of contract law." *United States v. Griffin*, 510 F.3d 354, 360 (2d Cir.2007) (citation omitted). Any ambiguities in a plea agreement are resolved against the Government. *United States v. Altro (In re Grand Jury Witness Altro)*, 180 F.3d 372, 375 (2d Cir.1999).

Mammedov's plea agreement estimated that his total adjusted offense level would be 30, and stated that "[t]his level carries a range of imprisonment of 97 to 121 months, assuming that the defendant will be sentenced within Criminal History Category I." App. 12. This estimate included, *inter alia*, a two point "vulnerable victim" enhancement. U.S.S.G. § 3A1.1(b)(1). It did *not* include a "serious bodily injury" enhancement. *Id.* § 2A3.1(b)(4).

The agreement made clear that "[t]he Guidelines estimate set forth in paragraph 2 is not binding on the [United States Attorney's] Office, the Probation Department or the Court." App. 12. Further, it stated that "[i]f the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is different from the estimate, the defendant will not be entitled to withdraw the plea." *Id.* Finally, the agreement provided that "based upon information now known to the Office, [the Office] will . . . not seek a sentence above the high end of the Guidelines range set forth in paragraph 2 [, *i.e.*, 97 to 121 months]." *Id.* 14. At the plea proceeding, the District Court emphasized the non-binding nature of the estimate in the plea agreement, calling it an "educated guess" and stating that "I will not know for sure what your sentence will be until after I've had an opportunity to study a presentence report." *Id.* 30.

The Probation Department's Guidelines calculation yielded the same total adjusted offense level as the plea agreement estimate, but differed in that Probation (1) declined to apply the two point "vulnerable victim" enhancement, and (2) applied a two level enhancement for "serious bodily injury" to the third victim, which was not included in the plea agreement. The Government objected to the presentence report, arguing that a "vulnerable victim" enhancement was warranted. The Probation Department disagreed and did not add the enhancement.

At sentencing, Mammedov did not object to the presentence report, and the Government did not argue for a "serious bodily injury" enhancement. As contemplated by the plea agreement, however, the Government did seek, over Mammedov's objection, the application of the "vulnerable victim" enhancement. The District Court found the "vulnerable victim" enhancement appropriate, resulting in a total adjusted offense level of 32, which

carries a Guidelines range of 121 to 151 months.[1] The Government agreed with the increased offense level. The District Court then sentenced Mammedov to a term of imprisonment of 124 months.

■ Mammedov argues that the Government breached his plea agreement by advocating a "vulnerable victim" enhancement at sentencing, thereby seeking "a higher Guidelines range than the agreed-upon range of the plea agreement." Appellant's Br. 11–12. We have already rejected "a broad rule, categorically prohibiting the government from deviating from a *Pimentel* estimate, [i.e., the Guidelines range estimated by a plea agreement,] absent newly discovered facts." *United States v. Habbas*, 527 F.3d 266, 272 (2d Cir.2008) (discussing *United States v. Pimentel*, 932 F.2d 1029 (2d Cir.1991)). Instead, when determining whether the Government has breached a plea agreement, we have stated that "[e]ach case turns on its facts, and the number of significant variables potentially in play in such an inquiry is enormous." *Id.*

In the case at bar, the plea agreement makes clear that the estimated offense level was only the "*likely* adjusted offense level," which was "not binding on the Office, the Probation Department or the Court." App. 11–12 (emphasis added). Though the agreement provides that "based upon information now known to the Office, it will . . . not seek a *sentence* above the high end of the Guidelines range set forth in paragraph 2 [, *i.e.*, 97 to 121 months]," *id.* 14 (emphasis added), the agreement does not say that the Government cannot seek a higher *Guidelines*

*range* based upon enhancements expressly contemplated by the plea agreement. Indeed, paragraph 3 unambiguously permits the Government to do so: "If the Guidelines offense level *advocated by the Office*, or determined by the Probation Department or the Court, is different from the estimate [provided in the plea agreement], the defendant will not be entitled to withdraw the plea." *Id.* 12 (emphasis added). By advocating for a "vulnerable victim" enhancement, the Government sought to increase Mammedov's Guidelines range from 97 to 121 months to a range of 121 to 151 months. At no point, however, did the Government urge the District Court to impose a sentence greater than 121 months. As required by paragraph 5.b of the plea agreement, the Government took no position concerning where within the Guidelines range determined by the District Court the sentence should fall. Thus, the Government did not breach Mammedov's plea agreement.[2]

Mammedov's reliance on *United States v. Palladino*, 347 F.3d 29 (2d Cir.2003), is misplaced. In that case, we held that "the Government breached the plea agreement by advocating a six-level sentencing enhancement on the basis of information that was known to the Government at the time of the agreement, but was not reflected in the estimated offense level in the plea agreement." *Id.* at 34; *see also Habbas*, 527 F.3d at 272 n. 1 ("The problem in *Palladino* was . . . the combination of the passages of the plea agreement conferring assurance that the government would not advocate for a sentence higher than the

---

1. The District Court's statement of reasons lists the total offense level as 30, App. 75, but this was clearly an error. At sentencing, the Court stated, "[t]hat makes the guideline or the total offense level a 32, I believe," with both parties indicating their agreement. App. 58.

2. It should be noted that Mammedov's sentence of 124 months, which the Government did not advocate for, was only three months above the upper range of the *Pimentel* estimate in the plea agreement.

estimate, with the aura of unfair dealing that underlay the government's change of position" and the court would have "reached the opposite result ... if the change had resulted from a good-faith, understandable oversight."). Here, unlike in *Palladino,* there was no change of position by the Government. The Government advocated for the "vulnerable victim" enhancement that Mammedov had stipulated to in the plea agreement. The unanticipated increase in Mammedov's offense level did not come from a change of position by the Government, but rather from the position taken by the Probation Department. Further, this scenario was contemplated by the plea agreement, which expressly provides that the offense level estimated in the plea agreement is not binding on the Office, the Probation Department or the District Court. Thus, *Palladino* is inapposite.[3] Accordingly, Mammedov's conviction and sentence of imprisonment are affirmed.

## II. The Restitution Order

■ When the District Court addressed restitution at sentencing, Mammedov's counsel stated that Mammedov was "penniless" and "going to be deported," and that it was not "practical or necessary that restitution be provided for" because "[i]t will never be accomplished." App. 62. Mammedov did not present the arguments he now raises on appeal. Thus, we review the District Court's award of restitution for plain error. *See United States v. Nuc-*

*ci,* 364 F.3d 419, 421 (2d Cir.2004) ("Because Nucci failed to object to any aspect of the order of restitution in the court below, we review his arguments on appeal for plain error.") (citations omitted).

Mammedov raises two objections to the District Court's award of $325,000 in restitution.[4] First, Mammedov argues that the District Court's award of restitution was improper because the money earned by Mammedov's victims, and for which the District Court ordered restitution, was the result of illegal conduct, *i.e.,* prostitution. This argument lacks merit for two reasons. First, this argument ignores that, either through force, fraud or coercion, or the inducement of a minor, Mammedov *caused* his victims to engage in illegal conduct. Given Mammedov's guilty plea, he knew that "force, fraud or coercion" was "used to cause [a] person to engage in a commercial sex act, or that [a] person ha[d] not attained the age of 18 years and [was] caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). Even if they engaged in illegal conduct, the women involved here were still Mammedov's victims. Second, 18 U.S.C. § 1593(a) provides that the court "*shall* order restitution for any offense under this chapter," which includes sex trafficking as proscribed by 18 U.S.C. § 1591. 18 U.S.C. § 1593(a) (emphasis added). "The order of restitution under this section shall direct the defendant to pay the victim ... the full amount of the victim's losses," *id.*

---

**3.** Mammedov cites *United States v. Camarillo–Tello,* 236 F.3d 1024 (9th Cir.2001), for the proposition that the Government may not change a position it has committed to in a plea agreement at the behest of a recommendation from Probation. This is true enough, but in *Camarillo–Tello* the Government failed to recommend a downward departure to the sentencing court despite having promised to do so in a plea agreement. *Camarillo–Tello,* 236 F.3d at 1025, 1027. In the case at bar, the Government did not breach the require-

ment that it "not seek a *sentence* above the high end of the Guidelines range set forth in paragraph 2 [, *i.e.,* 97 to 121 months]." App. 14 (emphasis added).

**4.** Although Mammedov's briefing raises a third argument, that two of the three victims to whom restitution was awarded were not part of the count of conviction, Mammedov's counsel waived this claim at oral argument.

§ 1593(b)(1), and those losses "shall ... include the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." *Id.* § 1593(b)(3). The term "victim" is defined as "the individual harmed as a result of a crime under this chapter," including sex trafficking. *Id.* § 1593(c). Thus, the express terms of 18 U.S.C. § 1593 require that the victims in this case, *i.e.*, persons who engaged in commercial sex acts within the meaning of 18 U.S.C. § 1591, receive restitution, notwithstanding that their earnings came from illegal conduct. There was no plain error here.

■ Mammedov's second argument is that there is insufficient basis in the record to find that the District Court considered the statutorily mandated factors when setting a restitution payment schedule. 18 U.S.C. § 3664(f)(2) requires a district court to "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—(A) the financial resources and other assets of the defendant ...; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant...." 18 U.S.C. § 3664(f)(2). The District Court has discretion to craft an appropriate payment schedule, *id.* § 3664(f)(3)(A), and a

> restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.

*Id.* § 3664(f)(3)(B). Although a district court is not required to state on the record that it has considered the mandatory factors in § 3664(f)(2), *United States v. Walker*, 353 F.3d 130, 134 (2d Cir.2003), if "the record does not establish that the sentencing judge considered the factors, we must vacate the restitution order and remand the case for resentencing," *United States v. Harris*, 302 F.3d 72, 75 (2d Cir.2002). Further, if "we are satisfied that the required factors were considered, we then review any findings resulting therefrom for clear error, and we review the district court's choice of a restitution payment schedule for abuse of discretion." *Id.* Finally, if a district court abuses its discretion by fashioning a restitution order that is unsupported by the record, this "constitutes an illegal sentence and amounts to plain error." *United States v. Mortimer*, 52 F.3d 429, 436 (2d Cir.1995) (internal quotation marks omitted).

The District Court failed to provide a payment schedule for the $325,000 award of restitution, and, at least implicitly, ordered that amount paid immediately. *See* 18 U.S.C. § 3572(d)(1) ("A person sentenced to pay ... restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments."); *Nucci*, 364 F.3d at 421. The District Court's apparent decision to require immediate payment of a $325,000 restitution award is not supported by, and is inconsistent with, the Court's findings regarding Mammedov's ability to pay. The District Court adopted the findings of the presentence report with respect to Mammedov's lack of financial assets, App. 75; PSR ¶¶ 53–57, seemed to accept Mammedov's assertion that he was "penniless," App. 62, and as a result, declined to impose a fine because of Mammedov's inability to pay, *Id.* at 60, 75. The District Court nonetheless decided to require immediate

payment of restitution for "symbolic" reasons. App. 62. We have previously found that requiring the immediate payment of restitution when nothing suggests that a defendant can pay such restitution constitutes an abuse of discretion. *Mortimer,* 52 F.3d at 436 ("[T]he court abused its discretion in requiring that Mortimer-who filed a personal financial statement listing no assets-pay the restitution immediately.... [N]othing before the district court suggested that Mortimer would be able to pay this significant amount immediately." (citation omitted)). Thus, requiring the immediate payment of $325,000 restitution despite the District Court's finding that Mammedov lacked the ability to pay was an abuse of discretion that constitutes plain error.

The Government suggests that there was a basis in the record to infer that Mammedov had access to at least some financial resources, *i.e.,* he supported himself with the proceeds of the prostitution business for four years and could, with the assistance of his wife, afford retained counsel. PSR ¶¶ 48, 56. But the District Court made no such findings, accepted the presentence report's finding that Mammedov lacked the ability to pay a fine, and appeared to order restitution irrespective of Mammedov's ability to pay. App. 62, 75; PSR ¶ 57.

When fashioning a payment schedule on remand, the District Court should take account of the mandatory factors laid out in 18 U.S.C. § 3664(f)(2) and construct a payment schedule that is supported by the record and the District Court's findings, including additional findings it may deem appropriate, regarding Mammedov's ability to pay restitution.

### III. Conclusion

For the foregoing reasons, we AFFIRM Mammedov's conviction and sentence of imprisonment, but VACATE the District Court's restitution order and remand for proceedings consistent with this order.