08-1829-cr (CON))
U.S. v. MacPherson

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2009

Submitted: October 19, 2009          Decided: December 30, 2009
                Docket No. 08-1829-cr (CON)

- - - - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA,
        Appellee,

            v.

CARLOS MACPHERSON,
        Defendant-Appellant.
- - - - - - - - - - - - - - - - - -

Before: NEWMAN, CALABRESI, and KATZMANN, <u>Circuit Judges</u>.

    Appeal from the April 15, 2008, judgment of the United States District Court for the Eastern District of New York (Dora L. Irizarry, District Judge), sentencing the defendant to 262 months' imprisonment upon his plea of guilty to narcotics offenses. The defendant contends that he should be permitted to withdraw his plea because at sentencing the prosecutor advocated a Guidelines sentencing range higher than the range estimated in the plea bargain. Judge Newman concurs with a separate opinion.

    Affirmed.

                        Todd M. Merer, New York, N.Y., for
                          Defendant-Appellant.

                        Benton J. Campbell, U.S. Atty., Susan

Corkery, Licha M. Nyiendo, Asst. U.S. Attys., Brooklyn, New York, N.Y., on the brief), for Appellee.

PER CURIAM:

This criminal appeal challenges a sentence for a narcotics violation on the ground that the Government violated the plea agreement by recommending a sentence higher than the range estimated to be applicable at the time of the plea. The appeal also challenges the reasonableness of the sentence, which included 262 months' imprisonment. Carlos MacPherson appeals from the April 15, 2008, judgment of the District Court for the Eastern District of New York (Dora L. Irizarry, District Judge). Applying plain error review to the challenge to the plea agreement, see Puckett v. United States, 129 S. Ct. 1423, 1428-33 (2009), we conclude that, if any error occurred with respect to the plea agreement, it was not plain error, and that the sentence survives review for reasonableness. We therefore affirm.

### Background

MacPherson and his co-defendants were charged in a three count indictment with various narcotics offenses. Pursuant to a plea agreement, MacPherson pled guilty to one count, which charged him with conspiring to import into the United States 100 grams or more of heroin and five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 963, 960(a)(1), 960(b)(2)(A), and 960(b)(1)(B)(ii). In conformity with United States v. Pimentel, 932 F.2d 1029, 1034 (2d Cir. 1991), the Government included in the plea agreement its estimate

of a likely Guidelines sentencing range.  The agreement stated, in

pertinent part:

> 2. . . . The Office will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence.  The Office estimates the likely adjusted offense level under the Guidelines to be level 32 [calculated from base offense level 34, see U.S.S.G. § 2D1.1(c)(3), less 2 levels for acceptance of responsibility, see id. § 3E1.1(a)].  This level carries a range of imprisonment of 121 to 151 months [in Criminal History Category I].  If the defendant pleads guilty on or before June 20, 2007, the government will move the Court, pursuant to U.S.S.G. § 3E1.1.(b), for an additional one-level reduction, resulting in an adjusted offense level of 31.  This level carries a range of imprisonment of 108 to 135 months, assuming that the defendant will be sentenced within Criminal History Category I.  Because the applicable statutory mandatory minimum sentence is ten years['] imprisonment, the applicable Guidelines range is expected to be 120 to 135 months.  The defendant stipulates that his sentence should be calculated based on a drug type and quantity of fifteen kilograms or more of a substance containing cocaine and waives any right to a jury trial in connection with such issue.

> 3. The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court.  If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is different from the estimate, the defendant will not be entitled to withdraw the plea.

> . . .

> 5. The Office agrees that:

> . . .

> based upon information now known to the Office, it will

> > b. take no position concerning where within the

Guidelines range determined by the Court the sentence should fall; and

      c. Make no motion for an upward departure under the Sentencing Guidelines.

If information relevant to sentencing, as determined by the Office, becomes known to the Office after the date of this agreement, the Office will not be bound by paragraphs 5(b) and 5(c).

At the plea hearing the District Court, after ascertaining that the defendant understood the rights he was giving up by pleading guilty, stated:

> Let me just also remind you that by entering into this [plea] agreement you have stipulated that your sentence should be calculated based on the drug type and quantity of 15 kilograms or more of a substance containing cocaine and that you have waived any right to a jury trial in connection with any such issue, do you understand that?

The defendant answered, "Yes."

The Court then discussed the Guidelines and stated:

> The bottom line is that until the date of sentencing when we get a presentence report, as I said before, and I hear from you, your lawyer and from the government, we will not know with any certainty what the guidelines will be or whether there will be grounds to depart from them or whether the Court will impose a non-guideline sentence, do you understand that?

The defendant answered, "Yes."

In response to the Court's inquiry, the prosecutor stated that "the government estimates that the defendant would fall within adjusted offense level 31" with a sentencing range, because of the ten year mandatory minimum, of 120 to 135 months. The Court then

-4-

ascertained that the defendant understood that "these are all estimates that are not binding on the government, Probation or the Court" and that "if this estimate is wrong, that you will not be permitted to withdraw your plea of guilty."

The Court then turned to the specifics of Count One, reading it verbatim to the defendant, including the references to importing "100 grams or more of a substance containing heroin" and "5 kilograms or more of a substance containing cocaine." The defendant explicitly acknowledged repeatedly traveling to Peru to make arrangements to purchase heroin and meeting a courier at John F. Kennedy Airport who was carrying ten kilograms of cocaine.

The Court accepted the guilty plea to Count One.

The Presentence Report ("PSR") determined that the defendant conspired to import and distribute fifteen kilograms of cocaine and seven kilograms of heroin. The PSR recommended an upward adjustment of 4 levels for the role that the defendant played in the offense, i.e., managing criminal activity involving more than five conspirators. As a result, the PSR found appellant's total offense level to be 37, 6 levels higher than the estimate of 31 in the plea agreement. The sentencing range at offense level 37 in Criminal History Category I is 210 to 262 months.

At sentencing, the defendant objected to the four level enhancement for his role in the offense and the inclusion of the seven

kilograms of heroin in the determination of his offense level. The Defendant did not object on the basis of the inconsistency between the estimate of the Guidelines sentencing range in the plea agreement and the PSR, nor did he seek to withdraw his guilty plea. The Government advocated a sentence based on seven kilograms of heroin, in addition to the cocaine, and a role adjustment. The District Court overruled the defendant's objections, reviewed the section 3553(a) factors, and determined that a non-Guidelines sentence was not appropriate. The Court also found that the defendant had not been forthright in his acceptance of responsibility. The Court found that the defendant's offense level was 37 with a sentencing range of 210 to 262 months and imposed a sentence of 262 months' imprisonment, five years of supervised release, and a $100 special assessment.

## Discussion

There are two issues for review: (1) whether the Government violated the plea agreement and (2) whether appellant's sentence at the high end of the applicable Guidelines range was appropriate.

I. Claimed Violation of the Plea Agreement

(1) <u>Standard of review.</u> Although we have previously ruled that a defendant need not object in the trial court in order to preserve for appeal a claim that a plea agreement has been violated, <u>see</u>, <u>e.g.</u>, <u>United States v. Griffin</u>, 510 F.3d 354, 360 (2d Cir. 2007); <u>United States v. Lawlor</u>, 168 F.3d 633, 636 (2d Cir. 1999), the Supreme Court

-6-

has more recently ruled that such claims are to be reviewed only for plain error in the absence of objection in the trial court. See Puckett, 129 S. Ct. at 1428-33. To prevail on plain error review, an appellant must show that (1) there is error, (2) it is plain, (3) it affects a substantial right, and (4) it seriously affects the fairness of the judicial proceedings, resulting in a miscarriage of justice. See United States v. Zvi, 168 F.3d 49, 58 (2d Cir. 1999).

(2) Applying plain error review.

For the first time on appeal, MacPherson contends that his sentence violated the plea agreement. His claim is based not only on the Government's advocacy of a sentence based on the seven kilograms of heroin that were not included in the Pimentel estimate, but also on the sentence in the plea agreement in which the defendant "stipulates that his sentence should be calculated based on a drug type and quantity of fifteen kilograms or more of a substance containing cocaine." He contends that the Government's advocacy that his sentence should be based on the seven kilograms of heroin, which were known to the Government at the time of the plea agreement, shows that the Government's estimate was in bad faith and justifies an opportunity to withdraw his plea. Whether this contention survives plain error review requires some consideration of two recent decisions concerning sentences that exceed Government Pimentel estimates, United States v. Palladino, 347 F.3d 29 (2d Cir. 2003), and United States v.

-7-

Habbas, 527 F.3d 266 (2d Cir. 2008).

Palladino ruled that the plea could be withdrawn after the prosecutor advocated a higher sentencing range than the range estimated in the plea agreement. However, in similar circumstances, Habbas ruled that the plea could not be withdrawn, stating:

> [W]e reject [the defendant's] argument that the government violated his rights under the plea agreement by advocating a higher Guidelines level than it had estimated in the plea agreement.

Habbas, 527 F.3d at 270. In addition, Habbas explicitly rejected the claim that Palladino "established a broad rule, categorically prohibiting the government from deviating from a Pimentel estimate, absent newly discovered facts." Id. at 272. In view of these conflicting outcomes concerning plea withdrawal in two cases where the prosecutor advocated a sentencing range higher than the range estimated in the plea agreement, the prosecutor's similar conduct in the pending case cannot have precipitated plain error, if any error at all.

Nor does the prosecutor's advocacy of a sentence based on the seven kilograms of heroin constitute plain error just because the plea agreement stated that the defendant "stipulates that his sentence should be calculated based on a drug type and quantity of fifteen kilograms or more of a substance containing cocaine." Initially, we note that, whereas typical contract stipulations state that the parties

-8-

stipulate to some agreed upon terms, the agreement in this case states only that the defendant stipulates to a sentence based on the cocaine quantity. In any event, the agreement and the plea colloquy put the defendant on notice that the Pimentel estimate was not binding on the prosecutor and that if the estimate was wrong, the plea could not be withdrawn. In such circumstances, there was no plain error.

II. Challenge to the Sentence

The Appellant contends that the District Court double-counted certain factors by sentencing him at the high end of the guideline range based on the same factors that provided the basis for the Court's finding of the applicable Guidelines range in the first place. These factors were that MacPherson had trafficked in heroin and cocaine in substantial quantities, he was an organizer and a supervisor and had recruited couriers, and he had engaged in narcotics offenses prior to the charged crime.

Initially, we note that there is no authority that prevents a sentencing judge from using facts of the offense conduct both to determine the applicable Guidelines range and to select a sentence within that range. In any event, the District Court did not limit its articulation of sentencing reasons to facts that determined the sentencing range. The Court explained that MacPherson created "his own drug organization," got his father involved in the organization as a courier, "preyed on some of [his] co-defendants when they were facing dire family situations and [] enticed them into helping [him] to bring

-9-

drugs into this country." The Court also noted that when one of MacPherson's co-defendants "tried to extricate herself, and in fact she did extricate herself, [appellant] still came after her trying to convince her to get back involved." Sentencing at the high end of the applicable range was not unreasonable.

## Conclusion

The judgment of the District Court is affirmed.

<u>U.S.A. v. MacPherson</u>
Docket No. 08-1829-cr (CON)

JON O. NEWMAN, <u>Circuit Judge</u>, concurring:

I agree that MacPherson is not entitled to withdraw his guilty plea because not only is there no plain error, as the Court holds, there is no error at all.  I add these additional views to explain why this is so, a discussion that endeavors to resolve the tension between <u>United States v. Palladino</u>, 347 F.3d 29 (2d Cir. 2003), and <u>United States v. Habbas</u>, 527 F.3d 266 (2d Cir. 2006), this Court's two most recent decisions on plea withdrawal claims based on a prosecutor's advocacy at sentencing of a Sentencing Guidelines range higher than the range estimated in a plea bargain.  These decisions differ not only in their outcomes (plea agreement violated in <u>Palladino</u>; plea agreement not violated in <u>Habbas</u>), but critically in their rationale as to what circumstances establish a breach of a plea agreement based on a so-called <u>Pimentel</u> estimate.  <u>See</u> <u>United States v. Pimentel</u>, 932 F.2d 1029, 1034 (2d Cir. 1991).

Notwithstanding these differences, the decisions are similar in several respects.  In both <u>Palladino</u> and <u>Habbas</u>, the plea agreement included an estimate by the prosecutor as to the applicable sentencing range under the Sentencing Guidelines.  Both agreements also included a statement that the estimate was based on information known to the Government at the time of the plea agreement.  And in both cases, the prosecutor contended at sentencing that the applicable Guidelines sentencing range was higher than originally estimated.  Despite these

similarities, we ruled that denying withdrawal of the plea was error in Palladino and was not error in Habbas.

Palladino found the agreement breached because "[i]t was . . . logical for defendant to believe that the estimate, and the Government's stance at the sentencing hearing, would not be altered in the absence of new information . . . ." 347 F.3d at 34.  The basis for that belief was said to be the phrase "based on information known to the Office at this time," a phrase that preceded the Government's Guidelines range estimate. Id. at 31.

There can be no doubt that Pallidino considered this phrase critical.  First, it was italicized when quoted. See id.  Second, the Court noted as "a curious fact" that this phrase was not brought to the attention of the sentencing judge. See id. at 33.  Third, and most important, the Court explicitly relied on the phrase in stating its rationale:

> In the circumstances presented in this case, we believe that defendant had a reasonable expectation that the Government would not press the Court for an enhanced offense level in the absence of new information.  The language of the agreement specifically stated that the Government's estimate was "based on information known to the [Government] at [the time of the plea]." . . . It was thus logical for defendant to believe that the estimate, and the Government's stance at the sentencing hearing, would not be altered in the absence of new information . . . .

Id. at 34.

However, Habbas views the phrase "known to the Government" as of little, if any, consequence:

> The problem in Palladino was not that those words appeared in the Pimentel estimate, but rather the combination of passages of the plea agreement conferring assurance that the government would not advocate for a sentence higher than the estimate, with the aura of unfair dealing that underlay the government's change of position. Based on our reading of Palladino, we very much doubt that the result of that case would have changed if, all else remaining the same, those words had not appeared in the Pimentel estimate.

Habbas, 527 F.3d at 272 n.1. I agree with Habbas on this point. Whether or not the Government says that its estimate is based on information "known to the Government at this time," the estimate could only be based on such information. It could not be based on what the Government does not know at that time!

The decisions also differ in the significance they attach to the phrases in both plea agreements stating that (a) the estimate "is not binding on the [United States Attorney's] Office," and (b) if the Guidelines level "advocated by the [United States Attorney's] Office" is "different from the estimate," the defendant could not withdraw the plea. Habbas says that these statements "warned in several different ways that the government was likely to advocate for a higher sentence." Id. at 270-71. Palladino accorded no significance to these statements and ruled that the plea agreement was violated when the Government advocated an enhancement based on information that had been known at the time of the plea.

In light of Palladino, a defendant in Habbas, named Rahman, contended that whenever the Government makes a Pimentel estimate, the plea agreement prohibits the Government from deviating from the

-3-

estimate in the absence of new evidence.  However, <u>Habbas</u> explicitly rejected that interpretation:

> [W]e reject Rahman's argument that the government violated his rights under the plea agreement by advocating a higher Guidelines level than it had estimated in the plea agreement.

<u>Habbas</u>, 527 F.3d at 270.  In addition, <u>Habbas</u> explicitly rejected the claim that <u>Palladino</u> "established a broad rule, categorically prohibiting the government from deviating from a <u>Pimentel</u> estimate, absent newly discovered facts." <u>See</u> <u>id.</u> at 272.

The plea agreement in the pending case does not have the "known to the Office" language, which <u>Palladino</u> deemed critical, but which <u>Habbas</u> deemed inconsequential.  On the other hand, the plea agreement does have the "not binding" and "advocate[]" language, which <u>Habbas</u> deemed critical, but which <u>Palladino</u> deemed inconsequential.

<u>Palladino</u> and <u>Habbas</u> are problematic, not only for their inconsistency but also for the uncertainty they risk for the use of <u>Pimentel</u> estimates.  I agree with <u>Habbas</u> that there should not be a bright-line rule permitting a plea to be withdrawn whenever the Government advocates a sentence above the plea agreement estimate.  If we start inquiring as to what the Government knew at the time of the plea agreement, we open up a difficult area.  Would the Government "know" of more offense conduct at the time of the plea agreement only if the evidence was in the office, or if an agent had told a prosecutor about it, or if a confidential informant had told the agent about it?

-4-

How reliable would the information have to be to be "known" to the Government for purposes of making a <u>Pimentel</u> estimate binding? In the pending case, the Government's knowledge of the heroin at the time of the plea agreement is clear, but if we were to make withdrawal of a plea available whenever the Government can be said to have "knowledge" of more offense conduct than is reflected in a <u>Pimentel</u> estimate, we would open up a potentially broad inquiry of uncertain limits.

I think a far better approach is to uphold all plea agreements with <u>Pimentel</u> estimates, regardless of whether the Government at sentencing advocates a higher Guidelines range (even one based on previously known facts), as long as the agreement makes clear that the Government is not bound by the estimate and the district judge ascertains at the plea colloquy that (1) the defendant understands that the estimate is not binding and (2) if the estimate is wrong, the defendant will not be permitted to withdraw his plea. That would leave <u>Pimentel</u> letters where they were initially intended to be: only estimates and not a basis for limiting the Government's sentencing advocacy nor a basis for withdrawing a plea.

In this case, the plea agreement explicitly stated:

> The Guidelines estimate put forth in paragraph 2 is not binding on the Office, the Probation Department or the Court. If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is different from the estimate, the defendant will not be entitled to withdraw his plea.

Plea Agreement, ¶ 3. This language makes clear that the Government may

-5-

advocate at sentencing a guideline higher than the estimate. The agreement in <u>Habbas</u> contained identical language, <u>see</u> <u>Habbas</u>, 527 F.3d at 270, and the <u>Habbas</u> opinion relied on it, <u>see</u> <u>id.</u>

More important, in our case, the plea colloquy included the following:

> THE COURT: The bottom line is that until the date of sentencing when we get a presentence report, as I said before, and I hear from you, your lawyer and from the Government, we will not know with any certainty what the guidelines will be or whether there will be grounds to depart from them or whether the Court will impose a non-guideline sentence, do you understand that?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you understand that these are all estimates that are not binding on the government, Probation or the Court?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you also understand that if this estimate is wrong, that you will not be permitted to withdraw your plea of guilty?
> THE DEFENDANT: Yes, Your Honor.

Thus, the Court's colloquy informed MacPherson that (a) until the Court heard from the Government, there would not be certainty as to what the applicable guideline would be, (b) the estimate in the plea agreement was not binding on the Government, and (c) if the estimate was incorrect, the plea could not be withdrawn.

A plea colloquy can be examined to determine a defendant's understanding of a plea agreement. <u>See</u> <u>United States v. Woods</u>, 581 F.3d 531, 534 (7th Cir. 2009); <u>United States v. Azure</u>, 571 F.3d 769, 773-74 (8th Cir. 2009); <u>United States v. Woolley</u>, 123 F.3d 627, 632 (7th Cir. 1997). The colloquy in this case removes any basis for

permitting the defendant to withdraw his plea simply because, at the time of the plea agreement, the Government knew of facts that would have justified a higher estimate.

If we permit withdrawal of a plea in cases such as this, we risk two adverse consequences. First, the Government will likely stop making Pimentel estimates. These estimates are not required, and will not be continued if they serve as a frequent basis for post-sentencing plea withdrawals. Second, the defendant gets two bites at the apple: he first argues at sentencing for a lenient sentence, and if he does not get one, he then appeals on the ground that he should be allowed to withdraw his plea. A properly worded plea agreement and a clear plea colloquy concerning that agreement, both of which were present in the pending case, should avoid both consequences.