People v Guerra
2026 NY Slip Op 03905
June 18, 2026
Court of Appeals
Halligan, J.
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

The People & c., Appellant,
v
Diego Guerra, Respondent.

Decided on June 18, 2026
No. 62

Christopher J. Blira-Koessler, for appellant.
Hannah Kon, for respondent.

Halligan, J.

[*1]
Prior to the defendant's trial on 68 counts of promoting and possessing a sexual performance by a child, his counsel signed a stipulation which the defendant contends effectively conceded guilt in light of the evidence and competing theories of the case. When counsel realized her error, she expressly disclaimed any strategic explanation for the relevant paragraphs of the stipulation and openly declared herself ineffective. We agree with the Appellate Division that the defendant received ineffective assistance, and we therefore affirm.
I
In January 2017, an NYPD detective ran a forensic software program to investigate the sharing of child sexual abuse material ("CSAM")FN1 on an online "peer-to-peer network."FN2 Such networks allow users to directly share electronic files without connecting to a central internet server. The forensic program identified 19 video files which were being shared from an unknown device at an IP address associated with a multi-family residential building in Queens. On July 27, 2017, police executed a search warrant at the building, which had 12 rented bedrooms with shared kitchens and bathrooms; the defendant shared one of the bedrooms with a roommate. Police seized approximately 20 electronic devices from the building, including a laptop computer from the defendant's room. A forensic preview of the laptop, which was not password protected, found no CSAM but did find digital artifacts indicating that the laptop had been used to run the peer-to-peer network. One of those artifacts was a list of files that had been downloaded using the laptop onto an external USB storage drive, and the titles of those files indicated that they were CSAM. No USB drive was recovered from the building.
A full forensic analysis revealed several pieces of evidence. First, there were 30 thumbnail images of CSAM on the laptop, including four screenshots from the shared videos. Those images were in the laptop's "unallocated" storage space, which is accessible only with specialized forensic software, and they had been moved there at an unknown date upon being deleted from the laptop's usable "allocated" storage space. Second, there had been activity on the peer-to-peer network on numerous occasions between August 15, 2016 and June 25, 2017. Third, the laptop's hard drive contained various files linked to the defendant, including two pictures of him created in January 2017, and two resumes bearing his name that were created in March and April 2017.
When detectives interviewed the defendant, he said that the laptop was his, that he sometimes found and repaired discarded electronics, that he found the laptop in the building's garbage around two or three months prior, and that it was already connected to the building's Wi-Fi network. He denied downloading or viewing any kind of pornography.
The defendant was charged with 19 counts of promoting a sexual performance by a child, corresponding to the 19 videos shared via the peer-to-peer network in January 2017. He was also charged with 49 counts of possessing a sexual performance by a child. Nineteen of the possession counts (20-38 of the indictment) pertained to possession of the videos in January. The other 30 possession counts (39-68 of the indictment) pertained to possession of the images on July 27, 2017, the day of the search warrant execution.
The defendant was tried a second time, after the first trial ended in a mistrial. Before the second trial, the parties agreed to the following stipulation:
"[1] Detective Tatum will testify that during January 2017, he utilized law enforcement software to download a total of nineteen (19) videos from IP address 72.225.184.220. Det. Tatum will describe the content of each video and the People will show three (3) different screen shots from the videos to the jury.
[2] Det. Connolly will testify that he performed a forensic examination of a Dell Laptop Model No. PP18L and that he found a total of sixty-three (63) images on the laptop, thirty (30) of which are under consideration by the jury. Det. Connolly will describe the 30 images and the People will show the jury three (3) of those images.
[3] The parties agree and stipulate th[at] each one of the nineteen (19) videos depicted and promoted a performance, which included sexual conduct by a child less than 17 years of age.
[4] The parties agree and stipulate that, whoever possessed each of the nineteen videos, promoted a performance, which included sexual conduct by a child less than seventeen years of age with knowledge of the character and content of the videos.
[5] The parties agree and stipulate that, whoever possessed these videos and images, knowingly had in his or her possession or control, or knowingly accessed with intent to view, a performance which included sexual conduct by a child less than sixteen years of age."
Paragraphs 3, 4, and 5 were originally proposed by the court prior to the first trial as part of a discussion about whether the images and videos would be shown to the jury. Defense counsel objected, stating that the People "can't just say just because it's on your laptop you knew it was there. I'm not foregoing [sic] that argument." No stipulation was signed or admitted into evidence, and the court ruled that only six photographs would be shown to the jury. When a mistrial was declared due to juror unavailability, the court stated that in a subsequent trial it would adhere to its ruling.
Before the second trial, the court reiterated that ruling, and the People again raised the prospect of a stipulation. Defense counsel said that she wanted to clarify "what's understood by [paragraph] five," and the court responded that the jury would "[one] [h]undred percent" have to find that the defendant knowingly possessed the CSAM in order to convict him. Defense counsel then agreed to the stipulation.
At the second trial, the stipulation was entered into evidence without objection. The People argued that the defendant was the person who shared and downloaded the videos and images, and that circumstantial evidence proved he had exclusively possessed the laptop since January 2017. The defense contended that although the defendant possessed the laptop in July 2017, he had not exclusively possessed it, and someone else had used the laptop to possess and promote the CSAM without the defendant's knowledge.
The court's instructions to the jury on promotion and possession largely tracked the Criminal Jury Instructions. On promotion, the court read the model instruction and reiterated that the People were required to prove "two elements," promotion and knowledge. On possession, the court instructed:
"Under our law a person is guilty of possessing a sexual performance by a child when knowing the character and the content, he knowingly has in his possession or control or knowingly accesses with intent to view any performance which includes sexual conduct by a child less than 16 years of age.
Possess means to have physical possession or otherwise to exercise dominion or control over tangible property.
Images stored in the cache of the computer may constitute evidence of images that were previously viewed, however, viewing computer images of a sexual performance of a child on a computer does not by itself constitute possession or control of such images. Rather, such affirmative acts such as printing, saving, downloading or the like is required to show the defendant, in fact, exercised dominion or control over images on his screen. . . .
Once again, the bottom line for you under these counts, the [P]eople are required to prove from all of the evidence beyond a reasonable doubt, once again, two elements:
One . . . the defendant knowingly had in his possession or control a performance which included sexual conduct by a child less than 16 years of age, or knowingly accessed with intent to view a performance which included sexual conduct by a child less than 16 years of age; and, two, the defendant knew the character and the content of the performance."
While deliberating, the jury sent a note asking, "What does procurement mean, and does he have to be guilty of all charges in one through 19[?]" The court instructed the jury on the definition of procurement and explained that each charge was "separate and distinct." The jury later sent a note requesting a "copy of the stipulations between both parties." Defense counsel objected to providing a copy, arguing for the first time that the stipulation [*2]undermined the court's instruction that the People must prove knowing possession, because "there ha[d] never been a dispute in this case [that] the computer was his . . . at the time it was seized." Defense counsel asked the court to amend the stipulation to read that "whoever knowingly possessed the videos and images knowingly had them in his possession and control" (emphasis added). The court provided the stipulation to the jury and declined counsel's request "to alter the evidence at this juncture."
The jury then sent another note asking, "Are we bound by the parties['] stipulation and procurement is them [sic] same thing as promoting. . . . Please clarify the charges numbers one through 19." Defense counsel requested that the court seek clarification of the request or issue a curative instruction clarifying the stipulation's meaning. She argued that she "had expressed . . . concerns about how [the stipulation] would be interpreted" and that it had "become[ ] confusing," emphasizing that she "certainly did not sign a stipulation with a strict liability that if you found he owned the computer that he knew the images were there and that they were child pornography, because if that's the interpretation, I am duty bound to ask for a mistrial based on ineffective assistance of counsel." She then moved for a mistrial on that basis, which the court denied. The court reread the definition of promoting to the jury and told them, "A stipulation is an agreement between the two parties that a certain fact is not an issue. The parties have agreed and stipulated to what you've read and seen." Defense counsel reiterated her objection and remarked, "this is a disaster." Two hours later, the jury convicted the defendant on all counts.
The Appellate Division reversed and ordered a new trial, holding that defense counsel was ineffective for agreeing to the stipulation (231 AD3d 852 [2d Dept 2024]). A "reasonable reading" of paragraphs 4 and 5, the Court concluded, was "that possession alone is tantamount to promoting a performance with knowledge 'of the character and content of' the videos," and "that possession alone is tantamount to knowing 'possession or control' or 'access[ ] with intent to view' " (id. at 854). The Court explained that this "elimination of the requisite mens rea element undermined the defense theory that, although the defendant undisputedly owned the laptop, someone else in his high-occupancy house may have been responsible for the videos or images being placed on the laptop or being trafficked using the laptop" (id. at 856). The Court further concluded that defense counsel's error in signing paragraphs 4 and 5 "was not part of any legal strategy or tactic" (id.). Additionally, the Court stated that defense counsel's error in signing the stipulation was "compounded by" the trial court's "erroneous refusal" to clarify for the jury that its prior legal instructions were controlling, and that the trial court's response to the final jury note was therefore "not meaningful" (id. at 857, citing People v O'Rama, 78 NY2d 270, 276 [1991]). Finally, the Court "note[d]," "[s]ince there must be a new trial[,]" "that the prosecutor engaged in improper conduct during summation" (id. at 857-858).
Two Justices dissented on the view that the trial court's instructions accurately stated the law and the stipulation was "part of a failed trial strategy" to show that "the defendant had never possessed the images" (id. at 858-859 [Brathwaite Nelson, J.P., dissenting]). One of the dissenting Justices granted the People leave to appeal to this Court.
II
We agree with the Appellate Division that defense counsel was ineffective for agreeing to paragraphs 4 and 5 of the stipulation.FN3
The defendant bears the burden of showing that "counsel failed to provide meaningful representation and thus deprived [him] of a fair trial," as well as "the absence of strategic or other legitimate explanations for counsel's challenged actions" (People v Watkins, 42 NY3d 635, 639 [2024], quoting People v Clark, 28 NY3d 556, 562 [2016] and People v Rivera, 71 NY2d 705, 709 [1988]). "The meaningful representation standard requires an assessment of the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation" (id., quoting People v Baldi, 54 NY2d 137, 147 [1981]). "Counsel's performance should be objectively evaluated to determine whether it was consistent with strategic decisions of a reasonably competent attorney" (id., quoting People v Benevento, 91 NY2d 708, 712 [1998]). Unlike the federal standard, our state standard "treat[s] prejudice as a significant but not indispensable element" and instead focuses "on the fairness of [*3]the proceedings as a whole" (id. at 639-640, quoting People v Caban, 5 NY3d 143, 155-156 [2005] and People v Stultz, 2 NY3d 277, 284 [2004]).FN4
Defense counsel's decision to sign paragraphs 4 and 5 of the stipulation, considered against the "totality" of the "circumstances of [this] particular case" (id.), deprived the defendant of meaningful representation. On their face, paragraphs 4 and 5 may be read to eliminate the crimes' mens rea requirements—the very elements on which the defense theory rested—contrary to the court's instruction that to convict the defendant of possessing the CSAM, the jury had to conclude beyond a reasonable doubt that he committed the requisite "affirmative acts." So understood, the stipulation would have undermined the defendant's core contention that he possessed the laptop without knowing it contained the CSAM. Certainly, stipulating to factual, procedural, or evidentiary matters may often benefit a criminal defendant, including by preventing the introduction of prejudicial evidence (see Gary Muldoon, Handling a Criminal Case in New York § 18:147 [2025]). In that regard, paragraph 3, which stipulated to the videos' content, may have served the goal of limiting the materials shown to the jury. But paragraphs 4 and 5, which provide that "whoever possessed" the videos "promoted" a sexual performance by a child "with knowledge of the character and content of the videos," and that "whoever possessed" the images did so "knowingly," went further than was necessary to serve that goal. And as explained below, the record reveals no other strategic reason for agreeing to those paragraphs' vital legal concessions.
Moreover, the record reflects the substantial risk that the jury understood the stipulation as effectively conceding guilt. The 30 counts for possession of the images required proof that the images depicted a sexual performance by a child, that the defendant possessed the images, that the possession was knowing, and that the defendant knew the character and content of the images (see Penal Law § 263.16). Counsel reasonably conceded the content of the images as part of her defense strategy to limit the images that were shown to the jury. She also conceded the defendant's possession of the laptop in July, when the images were found. As for possession of the images themselves, the court instructed that "[p]ossess means to have physical possession or otherwise to exercise dominion or control over tangible property," and that "[i]mages stored in the cache of the computer may constitute evidence of images that were previously viewed," but "affirmative acts such as printing, saving, downloading or the like is required to show the defendant, in fact, exercised dominion or control over images on his screen." Nonetheless, in the specific circumstances of this case, where the defendant conceded physical possession of the laptop and the images in the unallocated space were repeatedly described as "on the laptop" by the parties, the witnesses, and the stipulation itself, the stipulation could have allowed the jury to conclude that the defendant's physical possession of the laptop equated to his knowing possession of the images in the unallocated space. As for the video counts, although defense counsel contended that the defendant had never possessed the videos at all, the theory of the People's case was that the same person shared and downloaded both the videos and images. Thus, the stipulation's concession as to the image counts could well have tainted the jury's deliberations on video counts.FN5
Although defense counsel, upon receiving the jury's note asking if they were "bound by the stipulation," alerted the court to the possibility that the jury was confused about how the stipulation interacted with the court's instructions, the court responded by simply reiterating the definition of a stipulation to the jury. Counsel's belated objection therefore did not remediate the harm that the stipulation may well have caused.
Finally, counsel expressly disclaimed any strategic explanation for signing paragraphs 4 and 5 of the stipulation, and none is apparent. Those paragraphs were originally proposed by the trial court, not by counsel. Prior to signing, counsel made clear that she did not intend for the stipulation to concede knowing possession. Later, [*4]upon seeing the jury notes, counsel realized her mistake and said that she had not meant to stipulate to "strict liability," stating, "if that's the interpretation, I am duty bound to ask for a mistrial based on ineffective assistance of counsel." Going as far as to characterize her mistake as a "disaster," counsel could hardly have been clearer that she did not intend to stipulate to knowing possession of the images as part of her defense strategy. Although counsel had a legitimate strategic goal of limiting the CSAM shown to the jury, she could have accomplished that goal by stipulating that the videos and images contained a sexual performance by a child, and that whoever viewed the images and videos would have known that they contained a sexual performance by a child, rather than agreeing to the language in paragraphs 4 and 5.
In sum, defense counsel's stipulation to the legal conclusions in paragraphs 4 and 5 deprived the defendant of meaningful representation. Because we agree with the Appellate Division that the defendant's convictions should be reversed based on ineffective assistance, we do not address the alternative holdings below.
Accordingly, the order of the Appellate Division should be affirmed.
Order affirmed. Opinion by Judge Halligan. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Troutman concur.
Decided June 18, 2026

Footnotes

Footnote 1
The term "child sexual abuse material" ("CSAM") is "preferred" to "child pornography" because "it better reflects the abuse that is depicted in the images and videos and the resulting trauma to the child" (Child Sexual Abuse Material, U.S. Dept. of Justice at 1, June 2023, available at https://www.justice.gov/d9/2023-06/child_sexual_abuse_material_2.pdf [last accessed June 9, 2026]; see also United States v Johnson, 93 F4th 605 [2d Cir 2024] [using the term "CSAM"]).

Footnote 2
Because peer-to-peer networks lack "central file storage," accessing their contents "requires examination of the hard drives on each workstation connected to the network" (Jay E. Grenig & William C. Gleisner, III, 1 eDiscovery & Digital Evidence § 3:12 [Nov. 2025 update]). Some users therefore share illicit materials using networks of this kind.

Footnote 3
We reject the defendant's jurisdictional challenge under CPL 450.90 (2) (a) because the Appellate Division reversed Supreme Court's judgment based on a legal conclusion that the defendant received ineffective assistance.

Footnote 4
In light of our conclusion that the defendant is entitled to a new trial because he received ineffective assistance under the state standard, we do not reach his additional claim that he received ineffective assistance under the federal standard.

Footnote 5
The People appear to have acknowledged at argument that the charges rise or fall together for this reason (tr at 17-20).